UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GARY MORGAN,

           Plaintiff,           Case No. 1:24-cv-637

v.                                    Honorable Phillip J. Green

RANDEE REWERTS, et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will grant Plaintiff's motion to supplement his complaint (ECF

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

No. 5), and will dismiss Plaintiff's complaint as supplemented for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following DRF staff: Warden Randee Rewerts, Kitchen Supervisor Unknown Clark, and Classification Director Unknown Reddin.

Plaintiff alleges that Defendant Clark removed Plaintiff from his job assignment in the kitchen because Defendant Clark's "boyfriend (another) inmate" wanted Plaintiff fired.  (Compl., ECF No. 1, PageID.3.)  Plaintiff filed a grievance regarding the issue, to which Defendant Rewerts responded, telling Plaintiff that "healthcare" had informed "staff" that Plaintiff was not fit to work in the kitchen. (*Id.*)  Plaintiff then sent a kite to Defendant Reddin, asking why Defendant Reddin removed Plaintiff from his work assignment without due process.  (*Id.*)  Defendant Reddin also told Plaintiff that "medical" had told Defendant Reddin to remove Plaintiff from the assignment.  (*Id.*)  Non-party Melinda Brown of "medical" told Plaintiff that "medical" had nothing to do with the decision.  (*Id.*)

Plaintiff seeks declaratory and monetary relief. (*Id.*, PageID.4.)

### II.   Motion to Supplement Complaint

On July 3, 2024, the Court received Plaintiff's motion to supplement his complaint to add an allegation "[t]hat all Defendants acted under the color of law."

4

(ECF No. 5, PageID.22.) The Court will grant Plaintiff's motion (ECF No. 5) and treat Plaintiff's complaint and supplement (ECF Nos. 1 and 5) as the operative complaint in this case.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

5

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff alleges that Defendant Clark wrongfully removed Plaintiff from his work assignment and that Defendants Rewerts and Reddin incorrectly told Plaintiff that the decision had been made at the direction of medical staff. Plaintiff claims that he asked Defendant Reddin why Defendant Reddin removed him from his work assignment "without providing him due process." (ECF No. 1, PageID.3.) Therefore, the Court will construe Plaintiff's complaint as raising a Fourteenth Amendment claim for violation of procedural due process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property

6

interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job assignment in the kitchen did not trigger a right to due process, and his Fourteenth Amendment due process claim will be dismissed.

Moreover, termination from a prison job—even for possibly bogus reasons—does not rise to the level of an Eighth Amendment violation. *See McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (placing medical restrictions on prisoner which precluded particular job assignments did not violate the Eighth Amendment). As the Sixth Circuit has explained, "forcing an inmate to live without such privileges as . . . a job does not constitute the infliction of serious pain necessary to state an Eighth

7

Amendment claim." *Smith v. Sapp*, 156 F.3d 1232 (Table), 1998 WL 384620, at *1 (6th Cir. 1998) (citing *Rhodes,* 452 U.S. at 347-49).

To the extent that Plaintiff attempts to raise a Fourteenth Amendment claim for violation of Plaintiff's right to equal protection, his claim would likewise fail. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada,* 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff has not alleged facts that would plausibly suggest that Plaintiff was treated differently than any similarly situated prisoner. Accordingly, the Court will dismiss any intended Fourteenth Amendment equal protection claim.

Plaintiff is also unable to state a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (*See* ECF No. 1-2, PageID.9.) Title VII generally prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like. *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).  However, courts that have addressed the issue have consistently found that the relationship between a department of corrections and an inmate performing labor is *not* an employment relationship within the meaning of Title VII.  *See, e.g.*, *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372 (4th Cir. 2021) ("Persons in custodial detention—such as appellants—are not in an employer-employee relationship but in a detainer-detainee relationship that falls outside that paradigm."); *Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (finding that a prisoner could not advance claims under Title VII of the Civil Rights Act or the Fair Labor Standards Act (FLSA) because prisoners do not have employment relationships with prisons); *Vanskike v. Peters*, 974 F.2d 806, 809-12 (7th Cir. 1992) (finding that a prisoner was not an "employee" under the FLSA); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (finding that a prisoner could not pursue a claim under Title VII or the Age Discrimination in Employment Act because he was not a Bureau of Prisons employee).  The Equal Employment Opportunity Commission ("EEOC") has likewise issued guidance indicating that inmates performing prison jobs are not considered employees of an employer for purposes of Title VII. EEOC Dec. No. 86-7 (1986), 1986 WL 38836, at *3.

9

Yet, even if the Court were to presume that Plaintiff was an "employee" for purposes of Title VII, Plaintiff has not pleaded facts that would plausibly suggest (1) that he exhausted administrative remedies with the EEOC for his claim and (2) that he received a right-to-sue letter from the EEOC prior to filing his lawsuit. Both conditions are necessary predicates to pursuing a Title VII claim in court. *Granderson v. Univ. of Mich.*, 211 F. App'x 398, 400 (6th Cir. 2006); *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir.1998).

Finally, in a grievance appeal, Plaintiff alleges that he has been subjected to discrimination on the basis of his disability, which he states is wearing a colostomy bag. (ECF No. 1-2, PageID.8.) The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024) (internal citations omitted).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that he is a "qualified person," that he has a "disability," and that he has been denied a "service, program, or activity" of the state or subjected to discrimination.

Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Even assuming that Plaintiff is disabled within the meaning of the ADA and RA, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against *due to his disability*. Plaintiff's conclusory allegation of discrimination without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff fails to state a claim under the ADA and RA.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiffs complaint for failure to state a claim.

## Conclusion

The Court will grant Plaintiff's motion to supplement his complaint. (ECF No. 5.) Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint, as supplemented, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would

not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  July 22, 2024                             /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge